Docket No. 21-12962

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**EDWIN JONES**

Appellant

v.

**CITY OF BIRMINGHAM**

Appellee

---

**On Appeal from The United States District Court
for the Northern District of Alabama, Birmingham Division
Docket No. 2:19-CV-01426-CLM**

---

## OPENING BRIEF OF APPELLANT EDWIN JONES

---

SCOTT T. MORRO, ESQ.
Alabama Bar No.: ASB-4954-c30M
MORRO LAW CENTER, LLC.
1501 Decatur Highway
PO Box 1644
Gardendale, AL 35071
morrolawcenter@bellsouth.net
T: (205) 631-6301
F: (205) 285-8241

*Attorney for Appellant /Plaintiff*

1

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1, I, the undersigned counsel of record for Appellant Edwin Jones, certify that Appellant is not publicly held, has no parent corporation, subsidiary, conglomerate, or affiliate, and no publicly-held corporation owns 10% of more of its stock. I further certify that to the best of my knowledge the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal:

Samantha A. Chandler

City of Birmingham, Alabama

Edwin Jones

Judge Corey L. Maze

Scott Thomas Morro

There are no publicly traded corporations that have an interest in the outcome of this case.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents important issues relating to race discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Appellant, Edwin Jones, respectfully requests oral argument to be heard in this case, which Appellant believes would assist this Court in the determination of these issues.

# TABLE OF CONTENTS

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...... **Error! Bookmark not defined.**

STATEMENT REGARDING ORAL ARGUMENT ………………………iii

TABLE OF CONTENTS ............................................................................ iiv

TABLE OF AUTHORITIES ......................................................................... iv

STATEMENT OF JURISDICTION ............ **Error! Bookmark not defined.**

STANDARD OF REVIEW ........................................................................ xiii

STATEMENT OF THE ISSUES ............................................................... viii

STATEMENT OF THE CASE .................................................................... ix

STATEMENT OF FACTS ........................................................................... xi

SUMMARY OF THE ARGUMENT ........... **Error! Bookmark not defined.**

ARGUMENT ............................................... **Error! Bookmark not defined.**

CONCLUSION ........................................................................................... 10

CERTIFICATION OF COMPLIANCE ...................................................... 11

CERTIFICATE OF SERVICE ................................................................... 11

# <u>TABLE OF AUTHORITIES</u>

*Cases*

*Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306 (11th Cir. 2007)………..xiv

*Adams v. Austal, United Statesa., L.L.C.,* 754 F.3d 1240 (11th Cir. 2014)……....…8

*Bass v. Bd. of Cty. Comm'rs,* 256 F.3d 1095, 1119 (11th Cir. 2001)……………....5

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 US 53 (2006)……………...…..5

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)…………………………..…xiii

*Crawford v. Carroll,* 529 F.3d 961 (11th Cir. 2008)………………………...……..5

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)…………………..……..8

*Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004)…………………..……..5

*Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997)………………..………2, 4

*Jean–Baptiste v. Gutierrez,* 627 F.3d 816, 820 (11th Cir.2010)……………..…xiii

*Johnson v. Booker T. Washington Broadcasting Serv., Inc.,* 234 F.3d 501 (11th Cir. 2000)…………………………………………………………………………..4

*Lee v. Ferraro,* 284 F. 3d 1188 (11th Cir. 2002)………………………...……xiii

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)………………………………………………………………..1, 2

*Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269 (11th Cir. 2002)………..…..8

*Mills v. Cellco P'ship,* 376 F. Supp. 3d 1228, 1244 (N.D. Ala. 2019)……………..5

*Monaghan v. Worldpay US, Inc.,* 955 F.3d 855, 862 (11th Cir. 2020)………...….7

*National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101 (2002) …..…8

*Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 809 (11th Cir. 2010) …..8

 *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1274 (11th Cir. 2008)…………....xiv

*Sheth v. Webster,* 145 F.3d 1231, 1236 (11th Cir.1998)………………………....xiii

*Silverman v. Bd. of Educ.,* 637 F.3d 729, 734 (7th Cir.2011)……………....……2

*Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir.2011)…………..2

*Springer v. Convergys Customer Management Group, Inc.,* 509 F.3d 1344, 1347

(11th Cir.2007)…………………………………………………………..……1

*Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th

Cir.1997)……………………………………………………………………xiii

*Swindle v. Jefferson Cty. Comm'n,* 593 F. App'x 919 (11th Cir. 2014)…………..…8

*Telma Hall v. Alabama State University,* 2:16-cv-893-GMB, (M.D Jan. 8,

2019)…………………………………………………………………………...xiv

*Waddell v. Valley Forge Dental Assocs.,* 276 F.3d 1275 (11th Cir.2001)……….xiv

*Watson v. Kelley Fleet Servs., LLC,* 430 F. App'x 790, 791 (11th Cir. 2011)……...4

*Williams v. Apalachee Ctr., Inc.,* 315 F. App'x 798, (11th Cir. 2009)…………….5

*Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079 (11th Cir.2004)……………....xiii, 2

**Statutes**

42 U.S.C. § 2000e2(a)(1)……………………………………………………....…1

42 U.S.C. § 2000e-3(a)……………………………………………………….…..4

vi

## <u>STATEMENT OF JURISDICTION</u>

The U.S. District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331, 5 U.S.C. §§702 and 706. This Court has jurisdiction over this direct appeal from the final judgment of the District Court pursuant to 28 U.S.C. § 1291. On August 26, 2021, an appeal from the District Court's grant of motion for summary judgment on July 26, 2021 was timely filed.  This appeal is from a final judgment that disposes of all parties' claims.

## <u>STATEMENT OF THE ISSUES</u>

This appeal presents these distinct issues of constitutional law:

1.    Whether the District Court erred in granting the City of Birmingham's Motion for Summary Judgment as to Appellant's Title VII race discrimination claim.

2.    Whether the District Court erred in granting the City of Birmingham's Motion for Summary Judgment as to Appellant's Title VII retaliation claim.

3.    Whether the District Court erred in granting the City of Birmingham's Motion for Summary Judgment as to Appellant's Title VII hostile work environment claim.

## STATEMENT OF THE CASE

On August 29, 2019, Appellant, Edwin Jones (hereinafter "Appellant"), filed his Complaint under Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981 for race discrimination, retaliation, and hostile work environment. On November 8, 2019, Defendant, City of Birmingham, moved to dismiss Appellant's complaint. On January 28, 2020, the District Court granted Defendant's Motion to Dismiss and ordered Appellant to file an amended complaint on or before February 17, 2020.

On February 17, 2020, Appellant filed his Amended Complaint for race discrimination, retaliation, and hostile work environment. On March 2, 2020, Defendant again filed a motion to dismiss Appellant's complaint. (Doc. 12). On June 1, 2020, the case was reassigned to Judge Corey L. Maze. (Doc. 20). On June 24, 2020, a hearing was held regarding Defendant's Motion to Dismiss before Judge Mase and the Court entered an order granting in part and denying in part Defendant's Motion to Dismiss the Amended Complaint. (Doc. 25). On September 3, 2020, Defendant filed its Answer to the Amended Complaint. (Doc. 27).

On September 29, 2020, Plaintiff filed his Second Amended Complaint for claims of race discrimination under Title VII and 42 U.S.C. § 1981, retaliation under Title VII, and hostile work environment. (Doc. 28). On October 29, 2020, Defendant filed a Motion to Dismiss the Second Amended Complaint (Doc. 29) and, after a hearing, the Court dismissed Plaintiff's claims under 42 U.S.C. § 1981. (Doc. 37).

On May 10, 2021, Defendant filed a Motion for Summary Judgment and Brief in support. (Doc. 38-40). On June 1, 2021, Plaintiff filed a response in opposition to summary judgment (Doc. 41) and Defendant filed a reply brief. (Doc. 42). On July 26, 2021, the Court granted Defendant's Motion for Summary Judgment as to all counts. (Doc. 43-44).

### STATEMENT OF FACTS

On or about July 30, 2015, Appellant filed a charge of discrimination with the EEOC against the Appellee, City of Birmingham, based on race discrimination and retaliation for incidents that occurred during his employment as a police officer with the City of Birmingham. Following the EEOC investigation, Appellant ultimately filed a federal civil lawsuit against the Appellee for race discrimination and retaliation under Title VII and the case ultimately settled in July 2019. (Doc. 28, p. 4 ¶ 19). On or about September 7, 2018, Sergeant Rebecca Herrera (hereinafter "Herrera"), a Caucasian female, summoned Appellant to report to the Internal Affairs Division (hereinafter "IAD") for alleged "double dipping," a phrase used to denote an officer who is on duty for the City who clocks in and is working a side job simultaneously. (Doc. 28, p. 5 ¶ 21). Herrera is close friends with Lieutenant Julie Quigley-Vining (hereinafter "Quigley-Vining"), a Caucasian female, who was Appellant's former supervisor and the subject of Appellant's prior discrimination and retaliation EEOC charge and lawsuit. (Doc. 28, p. 5 ¶ 22). On October 18, 2018, Appellant was notified that he was scheduled for a hearing before the Chief of Police Patrick D. Smith (hereinafter "Chief Smith"), African American male, on October 23, 2018, regarding the alleged double dipping. On October 26, 2018, Appellant was notified that Chief Smith had not substantiated the double dipping charge. (Doc. 28, p. 6 ¶ 24).

On October 4, 2018, Appellant was dispatched to investigate an accident where a car struck a pedestrian. (Doc. 28, p. 6 ¶ 25). On October 30, 2018, Appellant was again summoned to Internal Affairs by Herrera, this time for failing to properly investigate the October 4, 2018 accident. (Doc. 28, p. 7 ¶ 28). Appellant spoke with Herrera's Internal Affairs supervisor, Lieutenant David Rockett (hereinafter "Rockett"), a Caucasian male, and requested to have Herrera's investigation transferred to another Internal Affairs investigator because of Herrera's relationship with Quigley-Vining and Herrera's previous investigation of him less than a month ago regarding the double dipping. Rockett stated that he knew about the Herrera/Quigley-Vining relationship, but that he was not going to transfer the investigation. (Doc. 28, p. 8 ¶ 30). On or around the date of the events listed above, Deputy Chief Michael Richards told everyone in Appellant's unit that he was giving everyone a direct order to not go to the EEOC, Human Resources, or Chief Smith with any complaints. (Doc. 28, p. 8 ¶ 32).

On December 13, 2018, Appellant filed a charge of discrimination with the EEOC because of the above-described events. On August 29, 2019, Appellant filed this action in the Federal District Court for the Northern District of Alabama. (Doc. 1).

## STANDARD OF REVIEW

The Appeals Court's review of the grant of summary judgment is de novo, with evidence considered in the light most favorable to the Plaintiff. See, e.g., *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir.2004). "In conducting de novo review of the district court's disposition of a summary judgment motion, [we] are required to resolve all issues of material fact in favor of the plaintiff." *Lee v. Ferraro,* 284 F. 3d 1188 (11th Cir. 2002); *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997).

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir.2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This responsibility includes identifying the portions of the record illustrating the absence

of a genuine dispute of material fact. *Id*.; Fed.R.Civ.P. 56(c)(1)(A). If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs*., 276 F.3d 1275, 1279 (11th Cir.2001).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga*., 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ. for Bibb Cnty*., 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted) *Telma Hall v. Alabama State University*, 2:16-cv-893-GMB, (M.D Jan. 8, 2019).

xiv

## SUMMARY OF THE ARGUMENT

The District Court's dismissal of Appellant's complaint must be reversed because that court's conclusion that Appellant did not have a constitutionally protected property or liberty interest directly conflicts with the laws of the State of Alabama and binding decisions by this Court and the Supreme Court.

## ARGUMENT

## I.    Appellant has Established a Prima Facie Case of Race Discrimination under Title VII

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1). In cases where the only evidence of discrimination is circumstantial, the court must "analyze the claim under the *McDonnell Douglas* framework, which requires the plaintiff to create an inference of discrimination through her prima facie case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir.2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of race discrimination, the plaintiff must prove that "(1) he belongs to a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his classification more favorably; and (4) he was

1

qualified to do the job." *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1091 (11th Cir. 2004) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Although the McDonnell Douglas framework is one way of showing discriminatory intent, is not the only way in a Title VII, § 1981, or ADEA Discrimination claim. See *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir.2011). According to the Eleventh Circuit, "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id*. "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents `a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Lockheed-Martin*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ*., 637 F.3d 729, 734 (7th Cir.2011).

The District Court clearly erred in dismissing Appellant's Title VII race discrimination claims. Specifically, the District Court found "that [Appellant] has failed to identify a similarly situated employee, it will not address adverse action." (Doc. 43, p. 7).

In this case, Appellant identified an officer outside of his protected class, Officer Donald Mason, a while male, who was treated more favorably than Appellant. Officer Mason was allowed to amend a report he made regarding the investigation of a traffic accident was not investigated for amending the report. (Doc.

2

40-1, p. 18). The District Court found that Appellant and Officer Mason were not proper comparator as "the accident Officer Mason investigated did not involve a fatality; Jones's did. Mason's handling of the incident did not prompt a complaint from a third party like ALEA; Jones's did." (Doc. 43, p. 7). However, the District Court came to this conclusion without any evidence in the record concerning the traffic accident Officer Mason investigated or report he amended. The only comparison in evidence is Appellant acknowledgement that Officer Mason's traffic investigation did not involve a fatality. (Doc. 40-1, p. 18). This detail alone is not sufficient to disregard Officer Mason as a proper comparator to Appellant, and without evidence to the contrary, Appellant has created a triable issue as to whether Appellant was treated less favorably than a member outside of his protected class under Title VII.

Further, since Appellant has shown that Officer Mason is a appropriate comparable, Appellant has established that the letter of counseling he received was pretext for race discrimination. Appellant has also shown that the Letter of Counseling stemming from the wreck investigation was improper, testifying that Appellant was instructed by his supervisor that body-worn cameras did not need to be activated during wreck investigations. (Doc. 40-1, p. 17).

Thus, Appellant has created a genuine issue of material fact as to his Title VII race discrimination claim and the District Court's grant of summary judgment in

3

favor of the Appellee on this issue is due to be reversed.

## II.    Appellant has Established a Prima Facie Case of Retaliation under Title VII

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff must show that she (1) engaged in . . . statutorily protected expression; (2) suffered an adverse employment action; and that (3) there is a causal connection between the protected activity and the adverse action. *Johnson v. Booker T. Washington Broadcasting Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000). "If a plaintiff establishes a prima facie case of retaliation and the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Watson v. Kelley Fleet Servs., LLC*, 430 F. App'x 790, 791 (11th Cir. 2011) (citing *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)).

"In order to constitute an adverse employment action for purposes of establishing a prima facie case under Title VII's anti-retaliation provision, the action must be materially adverse from the standpoint of a reasonable employee, such that

4

it would dissuade a reasonable employee from making a discrimination charge." *Williams v. Apalachee Ctr., Inc.,* 315 F. App'x 798, (11th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 US 53 (2006)). "Whether an employment action qualifies as adverse depends upon the circumstances of the particular case[] and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Mills v. Cellco P'ship*, 376 F. Supp. 3d 1228, 1244 (N.D. Ala. 2019).

"Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001), overruled in part on other grounds by *Crawford v. Carroll,* 529 F.3d 961 (11th Cir. 2008). A lapse in time of one month between a protected activity and an adverse action is sufficiently close to support a causal connection between the two. See *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

As the District Court found, Appellant engaged in a statutorily protected activity, namely the filing of his first EEOC charge and the federal civil lawsuit that followed. However, the District Court found that no causal connection was shown between any of Appellant's protected activity and the investigations or letter of counseling Appellant received.

At the outset, the District Court improperly limited its analysis of causal

5

connection to Appellant's 2015 EEOC charge and Appellant's filing of a lawsuit in 2016 against the City of Birmingham, which ultimately settled on July 29, 2019. (Doc. 28, p. 4 ¶ 19). The investigations into Appellant began in the September 2018 during litigation of Appellant's federal lawsuit. Appellant's participation in his own federal discrimination lawsuit is an ongoing protected activity, not limited to the date Appellant filed the lawsuit. Therefore, the District Court's analysis of temporal proximity was improperly limited to 2016 as Appellant's last date of a protected activity.

Since temporal proximity has been established, Appellant has shown in the record that he was subjected to two internal affairs investigations in 2018 while Appellant's discrimination lawsuit was in litigation. Further, the letter of counseling Appellant received regarding Appellant's alleged improper traffic accident investigation was dated July 31, 2019, just two days after settlement of Appellant's federal discrimination lawsuit. (Doc. 40-1, p. 21, 62). Moreover, the fact that Appellant received this letter of counseling regarding an investigation Appellant performed a year and a half prior, in October of 2018, is further evidence that this was done in retaliation for Appellant's participation in his ongoing federal lawsuit.

Appellant also testified as to the relationship between Lt. Quigley-Vining ("Quigley-Vining"), who was the subject of his prior discrimination lawsuit, and Sgt. Rebecca Herrera ("Herrera"), who investigated Appellant while his prior

6

lawsuit was in litigation. (Doc. 40-1, p. 18). Appellant requested that Internal Affairs supervisor Lt. David Rockett ("Rockett") remove Herrera from investigating Appellant, citing Herrera and Quigley-Vining's relationship, but this request was refused by Rockett. (Doc 40-1, p. 16). All of this occurred while Appellant's prior race discrimination and retaliation lawsuit was pending in federal district court.

Therefore, the District Court improperly found that Appellant failed to show a causal connection for this retaliation claim by limiting Appellant's protected activity to the time in which he filed his prior federal lawsuit. Appellant's prior federal lawsuit was in litigation and discovery when the adverse actions detailed above took place. Thus, a causal connection has been shown by Appellant and the District Court is due to be reversed on this issue.

### III.    Appellant has Established a Prima Facie Case of Hostile Work Environment under Title VII

The Eleventh Circuit also recognizes a cause of action for a hostile work environment based on retaliation. *Monaghan v. Worldpay US, Inc*., 955 F.3d 855, 862 (11th Cir. 2020). To make out a prima facie case for such a claim, a plaintiff must show (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a but for cause of the harassment; (4) the harassment was such that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (5) a

7

basis exists for holding her employer liable, either directly or vicariously. *Swindle v. Jefferson Cty. Comm'n,* 593 F. App'x 919, 929 n.10 (11th Cir. 2014).

In this case, the District Court found that "[Appellant] cannot satisfy the fourth element: pervasiveness and severity," and so dismissed Appellant's claim of hostile work environment under Title VII. For the reasons below, this finding by the District Court was in error.

The inquiry regarding the fourth element—whether the harassment was sufficiently severe or pervasive—contains both a subjective and objective component. *Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798, 809 (11th Cir. 2010) (en banc). In determining the objective element, a court looks to "`all the circumstances,' including `the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993); see also *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002). To evaluate whether a work environment is objectively hostile, we consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Adams v.*

*Austal, United Statesa., L.L.C*., 754 F.3d 1240, 1250-51 (11th Cir. 2014).

While the incident with Richards was not a frequent occurrence, the conduct displayed by Richards towards Appellant rises to the level of severe and pervasive under Title VII. As Appellant stated in his testimony, Richards "came in and he (Richards) stood right by me (Appellant), he was looking at me but he was talking abroad, he was looking right at me, he said, you better not go take your ass to the EEOC, better not take your ass to the chief's office, and you better not take your ass to the human resource. I check the sheets every day, and if I see your names on that sheet, I'm going to take my fingers and shove them so far up your ass you'll be able to see my hand through your mouth." (Doc. 40-1 Plaintiff depo. p. 84-85). Appellant's testimony about this incident was further supported by affidavits of officers who heard the encounter. (Doc. 41-1). This comment by Richards is certainly severe, as it is physically threatening and expressly prohibiting Appellant from exercising his rights under Title VII. As such, a jury could find that this action by Richards unreasonable interfered with Appellant's job performance.

Also, the District Court noted in its Memorandum Opinion in footnote four that "the version of this story Jones tells in his briefs varies significantly from the one he told in his deposition, which involves much more colorful language. While the court cannot make credibility determinations, this inconsistency further undermines Jones's assertion that Richards's statement creates an issue of fact for

9

trial." (Doc. 43, p. 14). However, this finding is flawed considering that Appellant's Brief in Opposition to Summary Judgment citied Richards' quote taken directly from Appellant's deposition. (Doc. 41, p. 12). To state that there was any level of inconsistency in Appellant's brief as compared to Appellant's deposition testimony is simply inaccurate and the District Court's reliance on such inconsistency to the detriment of Appellant is erroneous.

Accordingly, Appellant has created a genuine issue of material fact as to his Title VII hostile work environment claim and the District Court's grant of summary judgment in favor of the Appellee on this issue is due to be reversed.

## CONCLUSION

The Court should reverse the District Court's Order granting summary judgment in favor of the Appellee, City of Birmingham. Appellant has shown that summary judgment was improper and, when viewing the evidence in a light most favorable to the Appellant, it is clear Appellant has provided enough evidence that a genuine dispute of a material fact exists as to all of Appellant's claims. Appellant respectfully requests this Court reverse the District Court's Order granting summary judgment and remand this case back for further proceedings.

Respectfully submitted,

/s/ Scott Morro
Scott Morro (ASB-4954-C30M)

10

Attorney for Plaintiff/Appellant
Morro Law Center, LLC
P.O. Box 1644
Gardendale, AL  35071
(205) 631-6301 (office)
morrolawcenter@bellsouth.net

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing Appellant's Opening Brief is 3,715 words, exclusive of the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, and any certificates of counsel.

So certified on December 20, 2021.

/s/ Scott Morro
Scott Morro (ASB-4954-C30M)

## CERTIFICATE OF SERVICE

This is to certify that on December 20, 2021, I caused a copy of the foregoing Opening Brief of Plaintiff-Appellants to be deposited in the United States mail, First Class postage pre-paid, in an envelope addressed to the following persons:

Samantha A. Chandler
City of Birmingham
CITY ATTORNEY'S OFFICE
710 20th Street North
Birmingham, AL 35203
(205) 254-2369
samantha.chandler@birminghamal.gov

/s/ Scott Morro
Scott Morro (ASB-4954-C30M)

11